# In the United States Court of Federal Claims

No. 13-1015 C
(Filed October 9, 2015)

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | Civilian Pay; Equal Pay Act of |
| MARIA L. NORTH, | * | 1963, 29 U.S.C. § 206(d) |
| | * | (2012); Affirmative Defense of a |
| Plaintiff, | * | "Factor Other Than Sex"; |
| | * | Agency Policy Allows Starting |
| v. | * | Pay Above Minimum If |
| | * | Applicant Has Superior |
| THE UNITED STATES, | * | Qualifications and Would |
| | * | Forfeit Pay to Enter Federal |
| Defendant. | * | Employment. |
| * * * * * * * * * * * * * | * | |

*Basil L. North, Jr.*, Lee's Summit, MO, for plaintiff.

*Melissa L. Baker*, United States Department of Justice, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Washington, DC, for defendant.

---

## OPINION

---

**Bush**, *Senior Judge*.

This case is before the court on cross-motions for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). These motions have been fully briefed, and oral argument was neither requested by the parties nor deemed necessary by the court. For the reasons set forth below, the court grants defendant's motion and must dismiss plaintiff's claim.

# BACKGROUND

Ms. Maria L. North works as a Supervisory General Attorney for the United States Department of Education, Office of Civil Rights, in Kansas City, Missouri (OCR-KC). Compl. at 1. When she was hired in October 2008 Ms. North attempted to negotiate a starting salary above the minimum pay grade for her position, a GS-14 position. Ms. North was not offered a salary above that of GS-14, Step 1 because she could not demonstrate that she was taking a pay cut from her existing income in order to enter federal employment. In October 2009, a male applicant for an equivalent position at OCR-KC successfully negotiated a starting salary of GS-14, Step 10 because he supplied proof that he would be taking a pay cut to take the position.

In November 2011, Ms. North and Ms. Mary Jane McQueeny, another supervisory attorney at OCR-KC, discovered the difference between the salaries they were receiving compared to that of the male comparator, Mr. Joshua Douglass. Ms. McQueeny eventually resigned from her position and pursued a discrimination suit in the United States District Court for the Western District of Missouri. Her claims were dismissed after the district court granted summary judgment to the government on her discrimination claims, including her gender-based discrimination claim founded on the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (2012). *See McQueeny v. Duncan*, No. 13-00397-CV-W-GAF, slip op. at 11 (W.D. Mo. Nov. 14, 2014).

Ms. North lodged a formal discrimination claim with her agency in 2012. In September 2013 the agency found that neither race nor gender discrimination explained the difference in pay between Ms. North and Mr. Douglass and accordingly denied her claims. *See* Compl. Ex. 1 ("agency's final decision"). On December 23, 2013, plaintiff filed an Equal Pay Act suit in this court. The parties and the court agree that Ms. North has established a *prima facie* case of gender discrimination under the Equal Pay Act because she is performing equal work under equal conditions for less pay than a male comparator. The issue presented in the parties' cross-motions is whether the agency has met its burden to establish its affirmative defense that "any other factor other than sex," 29 U.S.C. § 206(d)(1), explains the pay differential between Ms. North and Mr. Douglass.[1]

---

[1]/ Jurisdiction over plaintiff's claim is undisputed. *See Harbuck v. United States*, 378
(continued...)

# DISCUSSION

## I. Standard of Review for RCFC 56

The moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." RCFC 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former version of Fed. R. Civ. P. 56(c)). A genuine issue, or dispute, of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A summary judgment "motion may, and should, be granted so long as whatever is before the . . . court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Celotex*, 477 U.S. at 323.

Any evidence presented by the non-movant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The burden on Ms. North, as a party resisting summary judgment, has been concisely described by the United States Supreme Court in the following statement:

> When the moving party has carried its burden under Rule 56([a]), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

---

[1](...continued)
F.3d 1324, 1330 (Fed. Cir. 2004) (noting that the appellant in that case "could . . . have filed her Equal Pay Act case in the Court of Federal Claims"); *Cooke v. United States*, 85 Fed. Cl. 325, 341 (2008) ("The Equal Pay Act constitutes . . . a money-mandating statute over which this Court has jurisdiction.") (citation omitted).

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (footnote and citations omitted). "[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotations and citations omitted).

## II. Statutory Scheme of the Equal Pay Act

In relevant part the Equal Pay Act states:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1). The Equal Pay Act "was established to protect against pay discrimination based on gender." *Yant v. United States*, 85 Fed. Cl. 264, 271 (2009). Under the Act, a plaintiff bears the burden of establishing a *prima facie* case that shows that

> he or she performed work that is similar to that performed by employees of the opposite sex involving equal skill, effort, and responsibility; that the work was performed under similar working conditions; and that the employer paid different wages to employees of opposite sexes for such work.

*Lissak v. United States*, 49 Fed. Cl. 281, 284 (2001) (citing *Corning Glass Works*

*v. Brennan*, 417 U.S. 188, 195 (1974)). "Once a prima facie case has been established, the burden of proof shifts to the defendant to show that the wage disparities fall under one of the four exceptions to the Act." *Id.* (citing *Corning Glass*, 417 U.S. at 196). The "exceptions" to the Act are also known as affirmative defenses. *See* 29 U.S.C. § 206(d)(1) (listing seniority, merit, production-based pay, and "any other factor other than sex," as the four defenses available under the Act); *Corning Glass*, 417 U.S. at 196-97 (describing the four permissible reasons for pay disparity between genders as "exceptions" and "a matter of affirmative defense").

### III.   Defendant's Pay-Setting Scheme

The legal foundation for the Department of Education's pay policy, as it pertains to offering greater than minimum pay to newly appointed employees who will be paid under the General Schedule (GS) system, is relatively straightforward. The governing statute is 5 U.S.C. § 5333 (2012); this statute, which addresses GS pay rates and the "Minimum rate for new appointments," states in relevant part:

> New appointments shall be made at the minimum rate of the appropriate grade. However, under regulations prescribed by the Office of Personnel Management which provide for such considerations as the existing pay or unusually high or unique qualifications of the candidate, or a special need of the Government for his services, the head of an agency may appoint, with the approval of the Office in each specific case, an individual to a position at such a rate above the minimum rate of the appropriate grade as the Office may authorize for this purpose. . . .

5 U.S.C. § 5333. Here, under the statute, an appointee such as Ms. North or Mr. Douglass would be paid at GS-14, Step 1 unless considerations such as "existing pay or unusually high or unique qualifications of the candidate" justified, in the discretion of the Secretary of Education and with the approval of the Office of Personnel Management (OPM), a higher starting pay.

Such personnel decisions are also governed by regulation. Of particular significance is the regulatory provision which explains how a highly qualified

5

appointee's existing non-federal income might impact the decision to award greater than minimum starting pay for a GS position:

> (c) *Pay rate determination*. An agency may consider one or more of the following factors, as applicable in the case at hand, to determine the step at which to set an employee's payable rate of basic pay using the superior qualifications and special needs pay-setting authority:
> (1) The level, type, or quality of the candidate's skills or competencies;
> (2) The candidate's existing salary, recent salary history, or salary documented in a competing job offer (taking into account the location where the salary was or would be earned and comparing the salary to payable rates of basic pay in the same location) . . . .

5 C.F.R. § 531.212(c) (2015). The regulation thus permits a federal agency such as the Department of Education to consider a variety of pay data, including "existing salary" and "recent salary history," in setting a new supervisory attorney's starting salary at the appropriate step on the GS-14 pay scale.

Finally, the agency has established a personnel policy which addresses above minimum starting pay. Issued in 1996, the policy is denoted Personnel Manual Instruction 338-1, or PMI 338-1, and addresses "Appointment Above Minimum Pay Rates Based on Superior and/or Unique Qualifications." Pl.'s App. Ex. 9; Def.'s App. at 21-22. Three provisions of PMI 338-1 are most pertinent here.

First, the instruction states that "[a] candidate's superior and/or unique qualifications for the position to be filled along with his/her forfeiture of existing pay should be considered <u>jointly</u> when deciding whether to ask for an above the minimum rate." Pl.'s App. at 69. Next, the instruction contains a definition of "existing pay":

> Existing pay is defined as the candidate's income from his/her present position and from any outside employment which forms a regular continuing portion of

> the candidate's total income and which the candidate will not be able to continue as a federal employee.

*Id.* at 70. Finally, the instruction describes the supporting documentation that will be solicited to support a request for "above minimum pay":

> Selecting officials should submit documentation supporting their requests to their servicing personnel specialists. The documentation should address: (a) the superiority or uniqueness of the individual's qualifications and/or special need of the organization for the individual being selected; (b) why an advanced rate is being recommended instead of or in addition to a recruitment bonus; and (c) the loss of compensation that would occur if the individual was appointed at the minimum rate.

*Id.* Thus, the agency considers superior qualifications and forfeiture of existing pay jointly for its pay-setting decisions, and requests documentation of "loss of compensation" in order to set pay at above the minimum (Step 1) for a GS pay grade.

### IV. Undisputed Facts Regarding the Starting Pay for Ms. North and Mr. Douglass

Both Ms. North and Mr. Douglass were hired by the same supervisor, Ms. Angela Bennett. Def.'s App. at 12. The court turns to the agency's final decision regarding Ms. North's Equal Pay Act claim for a concise description of how PMI 338-1 was applied in each hire. There appears to be no dispute as to the accuracy of the factual recitation in the agency's decision.

First, regarding Ms. North ("Complainant"):

> In 2008 when the Complainant was notified that she was accepted for the Supervisory Attorney position and informed that her salary would be at the GS-14, Step 1, level, she asked [Ms. Bennett] if she could be hired at a higher step level. [Ms. Bennett] told her that consistent

7

> with PMI 338-1, she would have to provide documentation of her current salary to justify such a request. The Complainant provided documentation of her earnings at the time, which did not indicate that she was earning an annual salary exceeding the minimum rate. She explained that because she was self-employed, her income varied over time and that although her most recent pay documentation did not indicate earnings in excess of the minimum rate, her tax returns for several prior years would show that she earned at least $120,000 per year. [Ms. Bennett] forwarded the Complainant's earnings documentation to HR for a determination as to whether it was sufficient to justify an appointment at above the minimum rate consistent with PMI 338-1. HR responded that it was insufficient because it did not establish that the Complainant earned in excess of the minimum rate in the current year. HR indicated that prior years' earnings could not be considered. After [Ms. Bennett] explained HR's determination to the Complainant, she agreed to accept the position as a GS-14, Step 1.

Compl. Ex. 1 at 6 (citations omitted). Because Ms. North's earnings for the year she was hired, 2008, were well below the minimum salary for the position ($91,781 per year), Ms. Bennett did not submit an application for above minimum starting pay for Ms. North. Significantly, when Ms. Bennett requested income verification from Ms. North at the time of her appointment, Ms. North disclosed in October 2008 that her 2008 earnings were probably "around $30,000 so far" because she was only working part-time. Def.'s App. at 23.

Unlike Ms. North, in 2009 Mr. Douglass was successful in his request for above minimum starting pay:

> In 2009 when [Mr. Douglass] was notified that he had been selected for the Supervisory Attorney position and that his salary would be at the GS-14, Step 1, level, he asked [Ms. Bennett] if he could be considered for a higher rate of pay. He explained that he doubted he

8

> could afford to leave his current job because of the loss of pay he would suffer if he did. [Ms. Bennett] explained to him the provisions of PMI 338-1 and asked him to provide her documentation of his current salary. When she received documentation showing that his existing salary was above the GS-14, Step 1, level, she routed a request to set [Mr. Douglass]'s pay at the GS-14, Step 10, level based on that salary and his superior[2] qualifications.
>
> The request included a justification memorandum from OCR's Assistant Secretary . . . , which explained that [Mr. Douglass] would suffer a loss in salary of about $39,990 if he accepted the position as a GS-14, Step 1, and that appointing him as a GS-14, Step 10, would minimize his loss in salary. The justification also contained documentation provided by [Mr. Douglass] showing that he was earning an annual salary of $134,662.08 in his then current position. At the time, the starting annual salary for a GS-14, Step 1, was $95,010, and for a GS-14, Step 10, it was $123,519. Accordingly, even as a GS-14, Step 10, [Mr. Douglass] suffered a loss in pay, although it was much less substantial than the loss he would have suffered if he had been appointed as a GS-14, Step 1.

Compl. Ex. 1 at 4-5 (citations omitted). One of the significant differences between Ms. North and Mr. Douglass, then, is the fact that Ms. North was self-employed and working only part-time when she applied for her position, whereas Mr.

---

[2] The agency here uses the term "superior" in the sense of highly qualified, not in the sense of higher qualifications than those possessed by Ms. North. *See, e.g.*, 5 C.F.R. § 531.212(b)(1) ("An agency may determine that a candidate has superior qualifications based on the level, type, or quality of the candidate's skills or competencies demonstrated or obtained through experience and/or education, the quality of the candidate's accomplishments compared to others in the field, or other factors that support a superior qualifications determination."); Compl. Ex. 1 at 5 (explaining that Mr. Douglass had superior qualifications as defined by 5 C.F.R. § 531.212); Pl.'s App. at 79 (explaining that OCR-KC used "superior qualifications" as a "category" to describe highly qualified applicants such as Ms. North and Mr. Douglass).

Douglass had a steady full-time salary at the time of his candidacy. Further, there is no dispute that Mr. Douglass's then-current or existing salary in 2009 was significantly higher than Ms. North's then-current earnings in 2008. For this reason, the agency's final decision on Ms. North's Equal Pay Act claim concluded that:

> [Ms. Bennett] and HR adhered to PMI 338-1 when they set starting salaries for [Mr. Douglass] and the Complainant, considering their qualifications and the forfeiture of existing pay they would suffer based on the existing pay documentation they provided.

*Id.* at 4.

## V.   Plaintiff's Arguments

Plaintiff raises three substantive arguments challenging the agency's defense of its pay-setting scheme, both in general and as applied in Ms. North's case. Before turning to those arguments, however, the court considers a less developed argument that was briefly presented in plaintiff's opening brief but which is absent from plaintiff's reply brief. Plaintiff's motion points out that defendant did not mention or specify an Equal Pay Act affirmative defense in the government's answer to the complaint. Plaintiff therefore urges the court to limit defendant's reliance on PMI 338-1:

> The defendant should be limited at this stage in articulating an "affirmative" argument in favor of its alleged "factor other than sex," PMI 338-1, since the defendant did not plead its reliance on PMI 338-1 as an affirmative defense. A "factor other than sex" defense is an affirmative defense on which the defendant has the burden of proof. Defendant did not allege or plead this affirmative defense on which it has the burden. Defendant should be limited to simply asserting the denial alleged in its pleadings.

Pl.'s Mot. at 13-14 (citing *Corning Glass*, 417 U.S. at 196-97 and Pl.'s App. Ex. 3). If the court understands plaintiff's threshold argument, which appears to be

founded on the doctrine of waiver of affirmative defenses and RCFC 8(c), plaintiff contends that defendant's summary judgment motion should be denied because of the government's technical failure to assert any reliance on a "factor other than sex" in its answer filed in this Equal Pay Act case.

Defendant contends that the government has not waived any arguments based upon a "factor other than sex" or PMI 338-1. First, the government notes that RCFC 8(c) enumerates a number of affirmative defenses but does not include the four exceptions of the Equal Pay Act (seniority, merit, production-based pay, and "any other factor other than sex") as affirmative defenses for the purposes of this rule of pleading. Second, defendant notes that the government's answer clearly references PMI 338-1, although this pay policy is not identified as an affirmative defense. Third, the government states that plaintiff was fully aware that the agency's defense to her Equal Pay Act claim rested on the affirmative defense of PMI 338-1 and a "factor other than sex," because that defense was articulated by the agency and was opposed by plaintiff during the review of her discrimination claims formally lodged with the agency. The court notes that PMI 338-1 and a "factor other than sex" are extensively discussed in the agency's final decision of September 23, 2013 rejecting plaintiff's Equal Pay Act claim; indeed, this document was attached to the complaint filed in this case on December 23, 2013. Defendant cites caselaw showing that any technical failure to plead an Equal Pay Act affirmative defense does not constitute waiver when the plaintiff was on notice of the defendant's affirmative defense and was not prejudiced by the technical failure. *See* Def.'s Mot. at 14.

In her reply brief, plaintiff offered no rebuttal to the government's arguments concerning its pleading and its right to assert an affirmative defense to Ms. North's Equal Pay Act claim. Thus, Ms. North appears to concede that the government did not waive its affirmative defense to her *prima facie* case of an Equal Pay Act violation. The court notes, too, that in her opening brief plaintiff failed to cite any relevant authority providing a specific pleading standard for affirmative defenses to Equal Pay Act claims.

It is important to note that plaintiff devoted much of her moving brief to PMI 338-1 and the government's "any other factor other than sex" affirmative defense. On this record, the court cannot conclude that plaintiff was prejudiced by the omission of this particular affirmative defense in the answer filed by the government. The court therefore holds that the government is not constrained

from raising a "factor other than sex," or PMI 338-1 in particular, as support for a summary judgment ruling in the government's favor. *See, e.g.*, *Santiago v. United States*, 107 Fed. Cl. 154, 160 (2012) (finding no waiver of an affirmative defense where the plaintiff was not prejudiced); *City of Gettysburg, S.D. v. United States*, 64 Fed. Cl. 429, 449 (2005) ("In general, a court may allow a non-plead affirmative defense to be raised if it would not result in prejudice to the party." (citing *Cities Serv. Helex, Inc. v. United States*, 543 F.2d 1306, 1313 n.14 (Ct. Cl. 1976))), *aff'd*, 173 F. App'x 827 (Fed. Cir. 2006); *Hauschild v. United States*, 53 Fed. Cl. 134, 140 (2002) (finding no waiver where Equal Pay Act affirmative defense was indirectly raised in answer even though it was not identified as an affirmative defense). The court now turns to plaintiff's remaining legal arguments.

      A.     **Whether PMI 338-1 is Void**

Ms. North first attempts to invalidate PMI 338-1 by arguing that the agency's personnel manual instruction contradicts the governing statute, 5 U.S.C. § 5333, and is "completely void." Pl.'s Mot. at 25. Although this argument is variously stated throughout the briefs presented by Ms. North, plaintiff appears to primarily assert that the agency ignored or impermissibly altered a congressional mandate to award higher starting pay to candidates with superior qualifications. Plaintiff's summary of this argument regarding PMI 338-1 states that

> the Department has enacted a procedural Instruction dealing with personnel matters that it was completely without authority to enact. Congress carefully provided a procedure enabling the Department to employ highly qualified personnel to discharge the mission of OCR and pay those highly qualified personnel commensurate with their qualifications and experience. The Department then enacted a personnel Instruction rescinding portions of the authority provided by Congress and the implementing Regulation by removing the ability to hire highly qualified personnel unless they were already highly paid. Congress imposed no such limitation on the hiring process and the Department was without authority to enact unauthorized limitations. Thus, PMI 338-1 as drafted and enacted by the Department is completely

12

> void and was void *ab initio*. OCR may not rely on a
> personnel Instruction that is legally void and without
> lawful force to justify its gross underpayment of the
> Plaintiff. By definition, it cannot constitute a *legitimate*,
> *gender neutral* "factor other than sex".

*Id.* at 24-25. Unfortunately for plaintiff, this argument is not supported by the text of section 5333 and/or 5 C.F.R. § 531.212(c). Further, plaintiff has not presented any binding or persuasive authority which supports her interpretation of the law on this issue.

Simply put, as demonstrated by the extensive statutory and regulatory excerpts discussed *supra*, section 5333 and 5 C.F.R. § 531.212(c) offer a federal agency head the discretion, once approval from OPM has been obtained, to offer higher starting pay to candidates with superior qualifications. These authorities also offer the agency head discretion to consider the existing pay of these candidates as part of the pay-setting process. The court finds nothing in the statute or regulation cited by plaintiff which forbids the Department of Education from restricting these higher starting pay awards to candidates with superior qualifications who would also forfeit pay if they received starting pay at the minimum of their federal GS pay grade. Although the court agrees with plaintiff that under section 5333 and 5 C.F.R. § 531.212(c) higher starting pay need not, necessarily, be restricted to individuals who can prove that they would be forfeiting pay to start at the minimum of a GS pay grade, these authorities nonetheless do not preclude the Department of Education from imposing such a restriction.

With respect to the case at hand, the key phrase in the statute states that "under regulations prescribed by the Office of Personnel Management which provide for such considerations as the existing pay or unusually high or unique qualifications of the candidate, . . . the head of an agency *may* appoint, with the approval of [OPM] in each specific case, an individual to a position at such a rate above the minimum rate of the appropriate grade as the Office may authorize for this purpose." 5 U.S.C. § 5333 (emphasis added). The key regulatory phrase states that "[a]n agency *may* consider *one or more* of the following factors, as applicable in the case at hand, to determine the step at which to set an employee's payable rate of basic pay using the superior qualifications and special needs pay-setting authority." 5 C.F.R. § 531.212(c) (emphases added). As defendant

13

notes, "both section 5333 and 5 C.F.R. § 531.212(b)-(c) use the permissive 'may,' rather than a mandatory 'shall' or 'will.'" Def.'s Mot. at 12 (citation omitted). Because PMI 338-1 falls within the ambit of the discretion afforded the agency by both statute and regulation, plaintiff's argument that PMI 338-1 is void fails.[3]

### B. Whether PMI 338-1 is Unlawful as Applied to Ms. North

Plaintiff's second argument (PMI 338-1 is unlawful as applied to Ms. North) is not easily distinguishable from its first argument (PMI 338-1 is void) because both arguments rely on plaintiff's flawed interpretation of the provisions of section 5333 and 5 C.F.R. § 531.212(c). Indeed, plaintiff asserts that the application of PMI 338-1 to Ms. North's request for higher starting pay was unlawful because "OCR followed PMI 338-1 in violation of the statute and the Regulation." Pl.'s Mot. at 16. To the extent that plaintiff's "unlawful as applied" argument relies, once again, on the assumption that PMI 338-1 violates section 5333 and 5 C.F.R. § 531.212(c), this argument fails for the reasons articulated by the court in the preceding section of this opinion.

To the extent, however, that plaintiff argues that PMI 338-1 might be facially valid but that its application was not gender-neutral in the case of Ms. North, this presents a different question. That argument was not presented until Ms. North filed her reply brief, and was confined to these two sentences:

> Even if defendant's Personnel Instruction were facially neutral, which it is not, "'[a] job classification system may be designed to be gender-neutral, but the manner in which it affects employees may not be gender-neutral.'" PMI 338-1 was not gender-neutral in its effect on plaintiff.

---

[3]/ To the extent that plaintiff alleges that PMI 338-1 frustrates congressional intent, *see* Pl.'s Mot. at 11; Pl.'s Reply at 10, the court notes that plaintiff has not referenced any legislative documents that might be relevant to such a charge. Instead, plaintiff relies solely on the plain text of section 5333 and 5 C.F.R. § 531.212. *See* Pl.'s Reply at 10 ("PMI 338-1 contradicts the clear intent of Congress expressed through [5 C.F.R. § 531.212] as well as the literal authority granted Federal agencies by the applicable statute and Regulation."). As noted above, the court disagrees with plaintiff's interpretation of the statutory and regulatory provisions at issue in this suit. The enumerated considerations for pay-setting provide federal agencies with the discretion to establish pay-setting policies such as PMI 338-1.

Pl.'s Reply at 14 (citing *Cooke v. United States*, 85 Fed. Cl. 325, 350 (2008)). Thus, according to plaintiff's argument, the Department of Education is alleged to have applied PMI 338-1 so that it disfavored Ms. North because of her gender.

This argument fails, for two reasons. First, it is not properly before the court because it was not raised until plaintiff filed her reply brief. *See, e.g.*, *Arakaki v. United States*, 62 Fed. Cl. 244, 246 n.9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete." (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002); *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 450, 467 (1999))). Second, the undisputed facts in the record show that PMI 338-1 would have been gender-neutral in its effect when Ms. North was earning a full-time salary in the years prior to 2008, because at those times she was earning above the starting salary for the OCR-KC GS-14 position. *See* Compl. Ex. 1 at 6; Pl.'s Mot. App. at 37-42. In other words, Ms. North's own income records show that PMI 338-1 would be gender-neutral in its effect if a female attorney such as Ms. North were forced to take a cut in pay in order to accept a position at OCR-KC. As defendant argues, it was clearly not Ms. North's gender at issue in the pay disparity with Mr. Douglass, it was her decreased existing income at the time she was offered the position at OCR-KC. Plaintiff has failed to raise a genuine issue of material fact as to the gender-neutrality of the application of PMI 338-1 by the agency. For these reasons, the court finds that PMI 338-1 was not unlawful as applied and was gender-neutral both facially and as applied in Ms. North's case.

### C. Whether "Market Force" Hiring Practices Tainted the Agency's Pay Determination

Plaintiff's final argument addressing the government's "factor other than sex" affirmative defense is her "market force" argument. This argument notes that there are "historically discriminatory antecedents" in the job market. Pl.'s Mot. at 20. Thus, when existing pay is a factor that is used to set the starting pay for federal employees, plaintiff contends that market forces tend to result in lower federal starting pay for women, and higher pay for men. In plaintiff's view, because PMI 338-1 overly relies on the existing pay of job candidates (which is statistically higher for men than for women), this pay policy perpetuates "'inequality in compensation among genders.'" *Id.* at 26. Plaintiff concludes, therefore, that

>       defendant's asserted "factor other than sex," PMI 338-1,
>       is a factor based on a gender-discriminatory premise. It
>       is, in fact, a "factor based on sex."

Pl.'s Reply at 12.

There is a certain appeal to this "market force" argument, at least from a historical standpoint. The court is not persuaded, however, that the Equal Pay Act claim before the court can proceed based upon such an abstract and generalized violation, if it is indeed a violation, of egalitarian principles. The court notes, first, that "existing pay" is enshrined both in section 5333 and 5 C.F.R. § 531.212(c) as a valid factor in setting the starting pay of federal employees.[4] Further, while Congress could have acted to rectify any "market force" gender discrimination caused by a reliance on "existing pay" which disfavors women, Congress has not chosen to do so. The court finds no statutory or regulatory support for plaintiff's "market force" challenge to PMI 338-1.

Turning to the cases relied upon by plaintiff, the court likewise finds no support for invalidating PMI 338-1 or its application to Ms. North's situation. These cases show that each Equal Pay Act claim requires a close analysis of the factual context of the pay practices at issue in the suit. The court will limit its discussion of the caselaw cited by plaintiff to the case most heavily relied upon by plaintiff, *Drum v. Leeson Electric Corp.*, 565 F.3d 1071 (8th Cir. 2009), which plaintiff describes as "strikingly similar" to the case at bar. Pl.'s Reply at 13.

In *Drum*, a long-term female employee was dismayed when a new male employee was hired to fill her former position (from which she had been promoted) and his starting salary was set well above her current salary in the higher position. 565 F.3d at 1072. She filed an Equal Pay Act claim but the district court granted summary judgment to her employer. Her employer asserted the "factor other than sex" affirmative defense, and relied in particular on the "market" value of the new employee's skills along with the lower prior salaries earned by Ms. Drum at the company over the years. The appeals court rejected as illegitimate the company's reliance on market value, as to the new male

---

[4]/ It is important to note that PMI 338-1 relies not solely on existing pay, but upon a joint consideration of existing pay and superior qualifications to consider setting an employee's pay above the minimum starting rate for that pay grade.

16

employee's starting salary, and quite disparate reliance on Ms. Drum's under-market salary history within the company, to maintain her at a much lower salary. *Id.* at 1073.

Although *Drum* is cited by plaintiff as a "strikingly similar" case to the instant matter, the court cannot agree. Ms. Drum and her male comparator were treated differently by a private company because their salaries were set pursuant to radically different methodologies, one market-based and the other prior salary-based. Here, Ms. North and Mr. Douglass were both paid pursuant to the agency's established policy set forth in PMI 338-1, which considered their qualifications and existing income according to the same measure that was equitably applied to each candidate. *Drum* does not show that plaintiff's "market force" argument, which attempts to invalidate a well-established federal pay-setting policy on the grounds that it fails to correct societal gender-based pay disparities, has support in Equal Pay Act caselaw.

For more relevant authority, the court turns first to the agency's final decision, which addresses the "existing pay" issue more directly and cites analogous cases. Most of the cases cited in the agency's final decision are appeals decided by the Equal Employment Opportunity Commission (EEOC). In two related cases, an external male hiree at the Department of Veterans Affairs was legitimately started at a higher wage than the female complainants because of his higher private sector existing salary and his qualifications. *Corbin v. Nicholson*, EEOC No. 01A60194 (June 26, 2006); *Jackson v. Nicholson*, EEOC No. 01A60193 (June 26, 2006). Indeed, the EEOC has consistently viewed "existing pay" as a legitimate pay-setting consideration when used in conjunction with other reasonable mission-related factors. *E.g.*, *Antosz v. Nicholson*, EEOC Nos. 07A30031 *et al.* (May 13, 2004) (citing *Kouba v. Allstate Ins. Co.*, 691 F.2d 873 (9th Cir. 1982); *Horner v. Mary Inst.*, 613 F.2d 706 (8th Cir. 1980)). It is clear from these decisions that the EEOC has approved of the consideration of higher private sector "existing pay" in federal pay-setting policies, and has found that such policies provide a legitimate affirmative defense to Equal Pay Act claims.

The court turns next to two district court decisions which address the practice of offering higher federal starting salaries based on qualifications and/or existing pay. The first court examined a situation where higher starting salaries received by three male comparators were based on superior qualifications alone. *See Teninty v. Geren*, 776 F. Supp. 2d 725, 735 (N.D. Ill. 2011) (citing 5 C.F.R.

§ 531.212). In that case, the court noted that legitimate, reasonable pay practices, if practiced without discriminatory intent, should survive Equal Pay Act challenges even if these practices left in place some lingering gender-discriminatory effects. *See id.* ("The Seventh Circuit also has indicated that a ["factor other than sex"] would not be negated if it was used without discriminatory purpose but produced a disparate impact.") (citations omitted).

In another decision, a district court addressed an Equal Pay Act claim where two male comparators were both more qualified than the claimant and were hired by the General Services Administration at a point in time when they were earning "existing pay" above the minimum for their federal pay grade. *See Kuntz v. Tangherlini*, No. C14-152-MJP, 2015 WL 1565910, at *1 (W.D. Wash. Apr. 8, 2015) (citing 5 C.F.R. § 531.212). The court held that superior qualifications and higher existing pay provided a legitimate "factor other than sex" in these pay disparity circumstances. *Id.* at *4 (citing *Teninty*, 776 F. Supp. 2d at 734). The Equal Pay Act claim was dismissed on summary judgment. These two district court cases show that the pay practice enshrined in PMI 338-1 has clearly been found to be legitimate under the Equal Pay Act.

Finally, the court turns to the decision issued by the United States District Court for the Western District of Missouri regarding the pay disparity between Ms. McQueeny and Mr. Douglass at OCR-KC, on facts which are fully analogous to the pay disparity between Ms. North and Mr. Douglass. Def.'s App. at 45-55. The court noted that Mr. Douglass's superior qualifications, *i.e.*, better qualifications than were required by the job description, in combination with his higher private sector salary, were a legitimate justification for the pay disparity between Mr. Douglass and Ms. McQueeny. *Id.* at 53. Thus, PMI 338-1 provided a legitimate "factor other than sex" to defeat Ms. McQueeny's Equal Pay Act claim.

Having reviewed the Equal Pay Act cases most analogous to the subject matter, the court concludes that "existing pay," when considered along with superior qualifications, is a reasonable factor relied upon in PMI 338-1, and that PMI 338-1 is thus a legitimate "factor other than sex" which excepts the pay disparity between Mr. Douglass and Ms. North from the remedial scheme of the Equal Pay Act. Although "existing pay" considerations may tend to generally disfavor women in some circumstances in federal employment, as alleged by plaintiff, in the circumstances of this case the court sees no Equal Pay Act

violation. *Cf. Wong v. Goldin*, EEOC No. 01912137 (Oct. 13, 1992) ("Courts have determined that a consideration of prior salary may be suspect in the context of an [Equal Pay Act] case because of the historical income disparity between men and women in the workplace. Nevertheless, we conclude, under the facts of this case, that the agency's consideration of the compara[tors'] prior salaries does not violate the [Equal Pay Act], since it was employed in combination with the [education, experience and restrictions on internal candidates] criteria outlined above and used reasonably in view of the agency's objectives.") (citations omitted). PMI 338-1 rationally considers both existing pay and superior qualifications to determine legitimate, non-discriminatory starting pay for the agency's employees.

Here, the undisputed facts show that it was not market forces but Ms. North's individual career circumstances which caused her starting pay to be set at GS-14, Step 1. A male candidate with a similar career path and reduced earnings would also, no doubt, have been denied higher than minimum pay at OCR-KC pursuant to PMI 338-1. In the court's view, PMI 338-1 is clearly gender-neutral and is a legitimate "factor other than sex." *Cf. Girdis v. Equal Emp't Opportunity Comm'n*, 688 F. Supp. 40, 46 (D. Mass. 1987) (holding that a federal personnel policy was a legitimate "factor other than sex" because a male employee would have experienced the same pay disparity as the female complainants if his work background had been the same as theirs). Because there is no genuine issue of material fact as to the legitimacy of the agency's affirmative defense of a "factor other than sex," plaintiff's "market force" argument fails.

## CONCLUSION

Ms. North has established a *prima facie* case of pay discrimination under the Equal Pay Act. Plaintiff concedes, however, that at the time of her acceptance of the position at OCR-KC she "could not demonstrate that her 'current salary' or 'existing pay' exceeded that of the minimum salary for GS 14, Step 1." Pl.'s Reply at 7. Unlike Ms. North, Mr. Douglass was able to prove to the agency that his existing pay at the time of his candidacy exceeded the minimum salary of GS 14, Step 1, and he therefore received a higher starting salary.

Pursuant to PMI 338-1, the agency's pay policy was equitably applied to Ms. North and Mr. Douglass. Because the agency's pay decisions were rationally based on a legitimate "factor other than sex," and because there is no genuine

issue of material fact in this regard, the government is entitled to summary judgment and plaintiff's Equal Pay Act claim must be dismissed. Accordingly, it is hereby **ORDERED** that

   (1)   Plaintiff's Motion for Summary Judgment, filed June 10, 2015, is **DENIED**;

   (2)   Defendant's Cross-Motion for Summary Judgment, filed June 26, 2015, is **GRANTED**;

   (3)   The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint, with prejudice; and

   (4)   Each party shall bear its own costs.

/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge